By the Court—Bosworth, Ch. J.
The Beferee has found “ that on the 6th of July, 1859, there was a deficiency in the filling of 3,040 feet from the point required.” *320 This is equivalent to - finding that the plaintiff has not performed the contract on his part. If the judgment is upheld, the defendant will be required to pay for labor that has not been performed; and will be so required on the ground that the certificate of Mr. Tompkins, of June 25th, 1859, is an estoppel against the defendant, precluding any inquiry whether the plaintiff has performed the contract on his part. It is found, as a fact, that the defendant had no notice prior to the last inspection of the work by Tompkins, that it was to be made. He had, therefore, no opportunity to be present and see that the measurement was accurate, and free from mistakes as to the actual point of high water-mark, and as to the height to which the dock had been filled.
The first and important question is, would an ex parte inspection of the work by Tompkins, and a decision by him, in good faith, that the work had all been done, conclude the defendant ?
In McMahon v. The N. Y. and E. R. R. Co., (20 N. Y. R., 465,) the contract was, inter alia, that the measurements and calculations of the quantities and amounts of the several kinds of work performed under it, should be determined by the Company’s engineer, and that he should “ decide every question which can or may arise between the parties, relative to the execution ” of the contract, “ and his decision shall be final and binding upon both parties.” It was held, that an ex parte estimate and measurement by the Engineer, without notice to the contractor, would not bind him. That case is treated as one in which no testimony was to be given before the arbitrator or Referee, but it was nevertheless held essential to a final and conclusive estimate, that notice of making it should be given to the contractor, so that he could be present and enabled to guard against mistakes.
The parties to the contract before us, covenant “ that it shall he submitted to Minthorne Tompkins, to decide when the several portions of the work of filling aforesaid are respectively done, so as to enable said party of the second *321 part to receive, and to oblige said party of the first part to pay the respective installments of the price aforesaid, and that the decision of said Minthorne Tompkins, when made on the matters aforesaid, should be binding on both parties.”
The literal import of this provision is, that if the parties do not agree upon the question whether either of the three installments in which payment was to be made, was due when payment was claimed, the parties shall submit the question to Mr. Tompkins. There is nothing in the instrument implying an understanding, that he was to decide the question without notice to either party. In the case above cited the contract work was to be done under the direction and constant supervision of the engineer, and he was authorized to reject and condemn all work or materials, which in his opinion did not fully conform to the •spirit of the contracts. Notice of his estimates and measurements, so as to be present when they were made, was of no consequence to the contractor, except to guard against mistakes and bad'faith.
Notice is as important, in the present case as in that, to guard against mistakes. It is equally important to guard against inattention or bad faith of the arbitrator, unless it is a legal presumption that a person in the position of the engineer would practice bad faith towards the contractor, when a person not employed by either party would not be guilty of it.
I see no just grounds for withholding from this case the application of the rule enforced in the case cited. The fact that the arbitrator or umpire in the present case, presumptively might know nothing of the work as it progressed, and the further fact that the agreement is in terms, “ that it shall be submitted to ” the person named, to decide, &c., present forcible considerations for holding* that the agreement indicates an understanding of the parties, that he was not to decide ex parte, but that they were at least to have notice and an opportunity to be present, and call his attention to whatever was necessary to secure an accurate measurement.
*322 ¡No such notice was given or opportunity had.
The only evidence that Amos was present at the time Mr. Tompkins first examined the work, by request of the defendant, is the testimony of the defendant. “ I recollect when Tompkins said the work was done, that I said, you and Amos can go and look at it, and if you and he say it is done, it is all right and we will pay it; T don’t know whether that was before or after he gave the certificate;”— and the testimony of Mr. Tompkins,—“I understood from defendant, before I went to look at the work with Amos, that he would like Amos to look at it; I met Amos there by appointment.”
Mr. Tompkins, although he testifies that Amos agreed to look at the work again on Tuesday night, yet he also says “ there was no understanding that I was to meet him there again.” Mr. Amos testifies that there was no agreement between him and Tompkins, that the latter should examine the work at any subsequent day.
It is quite clear that the two agreed when they together looked at the work that it was not completed, and that the defendant had no notice of any intended examination of it subsequently; and that the defendant, when shown the certificate of the 25th of June, 1859, immediately looked at the work and declared himself dissatisfied; had a survey made on the 6th of July, which the Referee has found to be accurate, and immediately notified Mr. Tompkins of the result of such survey, and refused to pay on the ground that the contract was not performed.
The certificate signed on the 25th of June, 1859, should not conclude the defendant, as it was given upon an ex parte examination by Mr. Tompkins, of which the defendant had no previous notice. The defendant (according to the evidence before us,) has not refused to attend upon a subsequent examination and measurement, nor manifested any disposition to deal inequitably with the plaintiff.
I think it should be held, as a rule applicable to all agreements'between two parties, to submit any matter of difference between them to the decision of a third person; *323 that it is essential to a final and conclusive decision that both parties should have notice of the time and place when such third person is to investigate the matter with a view to such decision, unless there be something in the terms of the agreement declaring or clearly importing that such notice need not be given.
I also think there is nothing in the contract, in question, of that import, but on the contrary, that the words, “it shall be submitted,” imply that the parties to the agreement were to go before the arbitrator named, and submit the question to him for his decision.
The complaint alleges full performance of the work, “ in accordance with the terms and requirements of said contract or agreement.” This the answer denies. The answer also alleges a deficiency, in the filling in, of over 3,000 cubic yards, and that the contractor has abandoned and left the work in such unfinished state. By the terms of the contract, the filling was to be completed by the 1st of May, 1859. No agreement extending the time allowed the contractor for completing his work, is alleged or shown. The strongest evidence of waiver of the time fixed by the contract is that given by the defendant to the effect that he said to Tompkins: “ You and Amos go and look at it, and if you and he say it is done, it is all right and we will pay it.”
That contingency has not occurred, whether this was said before or after the certificate was received by the defendant. If said before that, then the fact is that they said it was not all right,—that the work was not finished. If said subsequently, then the fact is that the two have not looked at it together since.
For these reasons I think the Referee erred, and that the judgment should be reversed, the report set aside and a new trial granted, with costs to abide the event.
Mobcbbef, J., concurred in this opinion.